UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JESSIKA BOONE, )<br> )<br> Plaintiff, )<br> )<br>v. )<br> )<br>OLD COLONY YOUNG MEN'S )<br>CHRISTIAN ASSOCIATION, )<br>JOSEPH BARAKAT and )<br>RALPH MCHUGH, )<br> )<br> Defendants. ) | Civil Action 13-13131-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.** November 17, 2015

## I. Introduction

Plaintiff Jessika Boone ("Boone") has filed this lawsuit against Old Colony Young Men's Christian Association ("OCY"), Joseph Barakat ("Barakat") and Ralph McHugh ("McHugh") (collectively, "Defendants") alleging racial discrimination in violation of 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e *et seq.* and intentional infliction of emotional distress. D. 1. Defendants have moved for summary judgment. D. 30. For the reasons stated below, the Court **ALLOWS** in part and **DENIES** in part the motion.

## II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect

1

the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

**III.   Factual Background**

Boone, an African-American woman, joined the OCY staff in September 2011. D. 30-4 at 3. She started with OCY as a youth care advocate and tutor at the Fall River STARR program, a residential treatment program for children. Id. In January 2013, Boone left the STARR program to become a caseworker at OCY's YouthBuild program in Brockton, Massachusetts, where she was paid $13 per hour. D. 30-5 at 3. YouthBuild is a community-based educational and vocational training program that serves disadvantaged young people from the Brockton area, over half of whom are African American. D. 30-6 at 3; D. 35 ¶ 12. Boone worked under the supervision of Barakat, the Assistant Director of the Brockton YouthBuild program. D. 35 ¶ 9.

During her employment at YouthBuild, Boone received reports from students that McHugh, a YouthBuild teacher, had made racially offensive comments. An African-American student reported that McHugh told her: "There are more African American people on Welfare than Whites; you should be ashamed of yourself. I know you all feel bad and might want to donate to the kids in Africa but I could give a damn. I change the channel and keep eating my food." D. 36-1 at 2. A student from Cape Verde said that McHugh said "he could care less about the kids in Africa . . . and there are enough people like that on welfare anyway." D. 36-2 at 2. A white student reported that McHugh told the class that he did "not know why people get so mad about slavery, sorry to break it to you guys but you guys were the ones selling your own fucking kind first."[1] D. 36-3 at 2. Boone and a coworker approached Barakat in early 2013 to report their discomfort with these comments. D. 35 ¶ 29. Barakat responded that that was the way McHugh was and they had to live with it. Id. ¶ 33.

Boone experienced several offensive incidents while working at OCY. First, at a staff meeting in January 2013, Barakat asked another employee if he had seen a pornographic movie called "Big Black Cocks." D. 35 ¶ 35-36. Boone, as well as two other employees, left the meeting after that comment. Id. ¶ 37. Second, in February 2013, McHugh stated to Boone at a staff meeting that Barakat, who is of Egyptian descent, was a "dune coon." Id. ¶ 39. Boone understood the term to be a derogatory reference to African Americans. Id. ¶ 40. Third, a white student in an angry and confrontational manner told Boone that she could "suck his dick." Id. ¶ 42. The student was suspended for one day and hired several weeks later as an employee at OCY. Id. ¶¶ 43, 52. Fourth, Barakat accused Boone of touching a male student inappropriately.

---

[1] Boone's complaint includes allegations of additional comments made by McHugh to students, but these additional allegations are unsupported by affidavits from the students and the Court has not considered them in its consideration of this motion.

Id. ¶¶ 54, 56.  Another employee had felt the student's pants pocket to determine if he had some keys.  Id. ¶ 55.  When Barakat learned that Boone was not the one who had touched the student's pocket, he did not apologize.  Id. ¶ 58.  Finally, Barakat used offensive gestures and language when interacting with Boone.  He gave Boone the middle finger as he walked past her desk.  Id. ¶ 60.  He told her that she was a "fucking idiot" for riding a motorcycle.  Id. ¶ 61.  He told her to "stop being a pussy."  Id. ¶ 62.  On one occasion, apparently when Boone had finished a project, he said:  "bitch, there is plenty of work to do."  Id. ¶ 63.  Barakat did not make such comments to white employees.  Id. ¶ 65.

In May 2013, Boone's mother, Darcel Boone, wrote a letter detailing her daughter's complaints about the YouthBuild program and sent it to the Chief Executive Officer of OCY.  D. 30-1 ¶ 30; D. 30-9 at 2-3.  The letter stated that Boone at her interview had been promised a higher wage for the caseworker position and that Boone had to do all of the work of another caseworker who was receiving a higher hourly wage.  D. 30-9 at 2.  The letter also stated that Barakat was "not a very approachable person" and had engaged in the "very inappropriate" behaviors detailed above.  Id.  Darcel Boone reported that Boone had complained to her about "constant racial slurs" and "inappropriate topics in staff meetings."  Id.  The letter also claimed that Boone was denied favorable treatment (pay raises, perks and dispensation to arrive late, leave early or skip shifts) afforded to other employees.  Id.

Upon receipt of the letter, OCY conducted an internal investigation of the allegations.  D. 30-4 at 27.  OCY's investigation yielded evidence of inappropriate language and discussion topics, but found no evidence of gender-based or race-based discrimination or harassment.  D. 30-6 at 5-9.  Barakat told the other YouthBuild employees about the letter from Boone's mother and Boone was ostracized at work.  D. 30-4 at 26; D. 35 ¶ 70.  Many of Boone's coworkers

refused to associate with her.  D. 35 ¶ 71.  Boone's coworker, Michael Piatelli, with whom she shared an office, negatively changed his behavior towards Boone and locked her out of the office after he learned of her mother's letter.  D. 30-4 at 15.  At a staff training, no one except Barakat sat at Boone's table, and Barakat did not discipline the other employees.  D. 35 ¶¶ 72-75.

On May 22, 2013, Boone filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against OCY and Barakat in which she alleged a hostile work environment and discrimination based on race and gender in violation of Title VII.  D. 30-10 at 2.  OCY responded to the complaint by detailing both the allegations made by Boone and her mother and the findings from its internal investigation.  D. 30-6.  On September 30, 2013, the EEOC dismissed Boone's claim.  D. 30-11 at 2.

Boone continued to work in the YouthBuild program at OCY until the end of October 2014, when she was laid off due to loss of funding for her position.  D. 30-4 at 20.  She does not allege that her layoff was discriminatory.  See id.

## IV.  Procedural History

Boone instituted this action on December 10, 2013.  D. 1.  The Court heard the parties on the pending motion for summary judgment and took this matter under advisement.  D. 39.

## V.  Discussion

### A.  Boone Has Raised a Triable Issue of Fact as to Whether She Suffered a Hostile Work Environment

Although Boone has asserted separate claims under Title VII and § 1981, the analysis of both claims is governed by the same framework, so the Court will consider these claims together. See T & S Serv. Assoc., Inc. v. Crenson, 666 F.2d 722, 724 (1st Cir. 1981).  To establish a prima facie case for race discrimination Boone must show:  (i) she is a member of a protected class; (ii) she was qualified for the employment she held; (iii) she suffered an adverse employment action;

5

and (iv) evidence of a causal connection between membership in the protected class and the adverse employment action.  Bhatti v. Trustees of Boston Univ., 659 F.3d 64, 70-71 (1st Cir. 2011).  The First Circuit has stated that the showing a plaintiff must make to establish a prima facie case is "small showing," "not onerous" and "easily made."  Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003) (internal citations omitted).

The parties do not dispute that Boone as an African American is a member of a protected class or that she was qualified for her position as a caseworker at OCY.  The parties disagree as to whether Boone suffered an adverse employment action and, if she did, whether such an adverse employment action was caused by her race.  An adverse employment action must materially change the condition of the plaintiff's employment.  Gu v. Boston Police Dep't., 312 F.3d 6, 14 (1st Cir. 2002).  Material changes must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002) (internal quotation omitted).  Workplace harassment, if sufficiently severe or pervasive to create a hostile work environment, may constitute an adverse employment action.  See Noviello v. City of Boston, 398 F.3d 76, 89 (1st Cir. 2005).  To succeed on a hostile workplace environment claim,[2] Boone must show:

> (1) that she is a member of a protected class; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on her membership of the protected class; (4) that the harassment was so severe or pervasive that it altered the conditions of her employment and created an abusive work environment; (5) that the objectionable conduct was objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

---

[2] Boone also alleges in her complaint that she was promised a higher salary in her initial interview than she ultimately received as a caseworker.  D. 1 ¶ 22.  She does not press this contention in her brief as an adverse employment action for purposes of her discrimination claims nor does she cite any evidence in the record that the change in her starting pay was based on her race.

Torres-Negron v. Merck & Co., 488 F.3d 34, 39 (1st Cir. 2007) (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)).

"There is no mathematically precise test to determine whether [a plaintiff] presented sufficient evidence" that she was subjected to a severely or pervasively hostile work environment. Kosereis, 331 F.3d at 216 (internal citations omitted). The degree of hostility or abuse to which a plaintiff was exposed can be determined only by examining the totality of the circumstances and relevant considerations "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). A hostile work environment is generally not created by a "mere offensive utterance," id., nor from "simple teasing, offhand comments, and isolated incidents." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal citation and quotation omitted). The hostile environment question is "commonly one of degree—both as to severity and pervasiveness—to be resolved by the trier of fact on the basis of inferences drawn 'from a broad array of circumstantial and often conflicting evidence.'" Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 474 (1st Cir. 2002) (quoting Lipsett v. Univ. of P.R., 864 F.2d 881, 895 (1st Cir. 1988)). While this fact specific determination "is often reserved for a fact finder, . . . summary judgment is an appropriate vehicle for policing the baseline for hostile environment claims." Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83 (1st Cir. 2006) (internal citations and quotation omitted).

The Court concludes that the record provides a sufficient basis from which a reasonable factfinder could find that Boone was subjected to a hostile work environment on the basis of her race. In her affidavit, Boone describes a series of incidents of harassment from January through

May 2013.[3]  At a staff meeting Boone attended, Barakat referred to a pornographic movie called "Big Black Cocks."  D. 35 ¶ 36.  This explicit pornographic title is based on racial stereotypes and a reasonable factfinder could find this comment to be harassment based on race.  On another occasion, McHugh told Boone that Barakat was a "dune coon."  Id. ¶ 39.  The use of this charged racial epithet in Boone's presence could also be interpreted by a reasonable fact-finder as race-based harassment.  Barakat called Boone a "bitch," "pussy" and "fucking idiot," and did not use that language to describe white employees.  Id. ¶ 65.  A reasonable jury could find that this pattern of explicit and humiliating remarks was more than "simple teasing, offhand comments, and isolated incidents" and rose to a level that a reasonable person would have felt it affected the conditions of her employment.  Faragher, 524 U.S. at 788.  Barakat also wrongly accused Boone of touching a male student inappropriately.  D. 35 ¶¶ 54, 56.  The First Circuit has held that false accusations of misconduct can contribute to the creation of a hostile work environment.  Noviello, 398 F.3d at 93 (considering in hostile work environment claim fact that employer leveled a baseless charge of inappropriate workplace conduct against plaintiff).  In addition, Barakat displayed indifference by refusing to intervene when Boone and a coworker complained to him about comments that could be taken by a reasonable factfinder to reflect race-based animus coming from McHugh.  D. 35 ¶¶ 33-34.  Taking the record evidence in aggregate in the

---

[3]In their reply, Defendants ask the Court to strike Boone's affidavit, D. 35, on the basis that it contradicts her prior sworn testimony.  D. 37 at 1-3.  It is correct that "[w]hen an interested witness has given clear answers to unambiguous questions, [she] cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."  Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994).  Defendants have pointed to a list of allegedly contradictory statements in Boone's affidavit.  See D. 37 at 2 n.1.  Although any inconsistencies between the two by Boone will be appropriate fodder for cross examination at trial, the Court does not conclude that these alleged inconsistencies merit striking the affidavit in its entirety.  Accordingly, the Court denies the request to strike Boone's affidavit.

light most favorable to Boone, the Court finds that a reasonable jury could find that she was subjected to a hostile work environment based on her race.

The Court therefore denies Defendants' motion for summary judgment on Boone's § 1983 claim (Count I) and Title VII claim (Count II).

### B. Boone's Claim of Intentional Infliction of Emotional Distress is Barred

Boone's claim for intentional infliction of emotional distress is barred by the exclusivity clause of the Massachusetts Workers' Compensation Act ("Compensation Act").  Mass. Gen. L. c. 152 § 24.  The exclusivity provision bars claims outside of the Compensation Act against employers "where (1) the plaintiff is shown to be an employee; (2) her condition is shown to be a personal injury within the meaning of the [Compensation Act]; and (3) the injury is shown to have arisen out of and in the course of her employment."  Brown v. Nutter, McClennen & Fish, 45 Mass. App. Ct. 212, 215 (1998).  All of the conduct described in Boone's complaint was in the course and scope of her employment at OCY.  The exclusivity bar encompasses emotional distress claims and claims against coworkers.  Doe v. Purity Supreme, Inc., 422 Mass. 563, 565 (1996); see McCarty v. Verizon New England, Inc., 674 F.3d 119, 122 (1st Cir. 2012); Rooney v. Bank of America, No. 12-11173-TSH, 2014 WL 1347124, at *8 (D. Mass. April 3, 2014).

The Court therefore grants summary judgment in favor of Defendants on Boone's intentional infliction of emotional distress claim (Count III).

### VI. Conclusion

For the foregoing reasons, the Court ALLOWS in part and DENIES in part Defendants' motion for summary judgment, D. 30.  The Court ALLOWS summary judgment for Defendants on the claim of intentional infliction of emotional distress (Count III) and DENIES summary judgment on the claims of racial discrimination (Counts I and II).

**So Ordered.**

/s/ Denise J. Casper
United States District Judge